44 N.Y.2d 795 (1978)
In the Matter of Thomas Lynch et al., Appellants,
v.
New York City Conciliation and Appeals Board et al., Respondents.
Court of Appeals of the State of New York.
Argued March 28, 1978.
Decided May 2, 1978.
Kent Karlsson for appellants.
William E. Rosen and Ellis S. Franke for New York City Conciliation and Appeals Board, respondent.
Robert S. Fougner for Parkchester Management Corp., respondent.
Concur: Chief Judge BREITEL and Judges JASEN, JONES and WACHTLER. Judge GABRIELLI, dissents and votes to reverse in the following opinion in which Judges FUCHSBERG and COOKE.
Order affirmed, with costs, on the memorandum at the Appellate Division (56 AD2d 816).
GABRIELLI, J. (dissenting).
I respectfully dissent, and would hold that the distinction drawn by respondent New York City *797 Conciliation and Appeals Board (CAB) between a renewal lease, which is subject to rent increase guidelines, and a lease "modification" which serves solely to renew the lease and yet is not subject to the guidelines, is indeed irrational, arbitrary, and capricious.
Petitioners are the tenants of an apartment in a building owned by respondent Parkchester Management Corp. (Parkchester), and a tenants' association. The named tenants originally entered into a one-year lease agreement with Parkchester in October, 1972 for an apartment which was at that time vacancy decontrolled. The landlord did not offer another lease in October, 1973, because it was considering a plan to convert the building into a condominium. The tenants thus remained as month-to-month tenants for several months following expiration of the original lease. In January, 1974, apparently because its conversion plan was not faring well, Parkchester offered the tenants a 10-month lease, to commence on March 1, 1974 and to terminate on December 31, 1974. Since the probable alternative was termination of the tenancy, the tenants signed the 10-month lease agreement. In late March, 1974, the landlord, motivated either by the singular lack of success of its conversion plan, or by the anticipated imposition of rent stabilization in the near future, offered to extend the lease for an additional two years, commencing in January, 1975, with graduated rental increases over the additional two-year period. This extension agreement was entered into in April, 1974.
On July 1, 1974, the apartment building became subject to rent stabilization. The landlord originally informed the tenant that although the 10-month lease agreement was not subject to the rent increase guidelines promulgated under the rent stabilization laws, the extension agreement was. The effect of this would be a decrease in rentals for that additional two-year period. Subsequently, however, the landlord changed its position, and informed the tenants that neither agreement was subject to the guidelines. The tenants disagreed, with respect to the two-year extension agreement only, and the dispute was submitted to respondent CAB. The CAB originally ruled in the tenants' favor, finding that the extension agreement was a renewal lease with an effective date of January 1, 1975, which was thus subject to the guidelines. Upon Parkchester's request for reconsideration, however, the CAB changed its decision, and declared that the extension agreement was *798 merely a "modification" of the existing March 1, 1974 lease, and that as such it was not subject to the guidelines. The tenants then commenced this article 78 proceeding seeking to annul the decision of the CAB. They prevailed in Supreme Court, but that decision was reversed on appeal, the Appellate Division holding that the determination was within the CAB's field of expertise and was neither irrational, arbitrary, nor capricious. Unlike the majority of this court, I cannot agree with the decision of the Appellate Division.
The issue before us is a simple one: is the extension agreement a renewal lease, or is it a mere modification of an existing lease which does not constitute a renewal? If it is a renewal lease, it is subject to the guidelines, as all parties agree, since it did not take effect as a renewal lease until January 1, 1975. If, on the other hand, it is a mere modification of the lease which had become effective on March 1, 1974, and not a renewal lease, it is not subject to the guidelines. A few basic examples of the effect of the rent stabilization provisions may serve to clarify the situation. As noted above, July 1, 1974 is the date upon which the present rent stabilization provisions became effective in New York City. A lease, or a renewal lease, which was entered into on June 30, 1974, and which became effective on that same day, would not be within the guidelines. In contrast, a lease, or a renewal lease, which was entered into on or before June 30, 1974, but which did not go into effect until July 2, 1974, would be subject to the guidelines. A mere modification of a lease which had itself become effective prior to July 1, 1974, would not subject that lease to the guidelines. A renewal lease, however, even if entered into prior to July 1, 1974, but which did not take effect until after July 1, 1974, would be subject to the guidelines.
The tenants contend that this case falls within the latter category. The landlord and the CAB, however, have characterized the extension agreement as a mere modification of the March 1, 1974 lease, which is thus not subject to the guidelines. Of considerable importance in resolving this dispute is the definition of a renewal lease which is applicable to this controversy, and that definition is contained in section 2(s) of the Code of the Rent Stabilization Association of New York City, Inc., which states that a renewal lease is "Any extension * * * of a tenant's lawful occupancy of a dwelling unit after the completion of his lease term, including but not limited to *799 a written extension of an existing lease or the execution of a new lease for the same space." It must be emphasized that the extension agreement involved in this case makes no changes in the terms or conditions of tenancy under the March 1, 1974 lease. Rather, its sole effect was to extend that lease for another two years with graduated increases in both security and rental over the term of that additional two-year period. If this is not a renewal lease, especially under the broad definition quoted above, it defies logic to determine what would be a renewal lease short of using the term "renewal" therein, which is not required because of the plain, broad and specific language in the code.
Respondents would avoid this conclusion by characterizing the extension agreement as a mere modification of the existing lease, and thus not a renewal lease. This reasoning is specious. While any renewal of an existing lease could also be called a "modification", this does not serve to transform it by some metaphysical leap into something other than a renewal lease. To so reason is to exalt semantics over reality and to reach a desired result by a method of analysis analogous to calling a horse an animal and thus concluding that someone who steals it is not a horse thief. I cannot concur in such an absurdity.
Accordingly, I vote to reverse the order appealed from and reinstate the judgment of Supreme Court, New York County.
Order affirmed, etc.